## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CLETIS R. O'QUINN,**

**Petitioner,**

v.                                                                          **CASE NO. 23-3116-JWL**

**PRISONER REVIEW BOARD,**

**Respondent.**

### <u>MEMORANDUM AND ORDER</u>

This matter is a petition for writ of habeas corpus under 28 U.S.C. § 2241. Petitioner and state prisoner Cletis R. O'Quinn proceeds pro se and asserts that his constitutional rights were violated when his term of parole was improperly extended after he completed it, due to the ex post facto application of the state law affecting parole terms. Having considered Petitioner's arguments, together with the state-court record and relevant legal precedent, the Court concludes that the claims in this matter are subject to two procedural bars—procedural default and untimeliness— and Petitioner has not made the necessary showing that would allow the Court to consider the merits of his arguments. Thus, Petitioner **is not** entitled to federal habeas corpus relief and the Court **denies** the petition.

### Nature of the Petition

Petitioner seeks federal habeas relief in the form of an order directing his immediate release and monetary damages for his allegedly illegal incarceration. (Doc. 5, p. 11.) He asserts one ground for relief: the respondent in this matter, the Prisoner Review Board, and its predecessor, the Parole Board, retroactively applied a 2008 Kansas statutory amendment to extend Petitioner's term of parole for his 1990 convictions, in violation of the Ex Post Facto Clause of Article I, section 10 of the United States Constitution.

1

## Factual and Procedural Background

This federal habeas matter concerns two sets of state-court convictions and sentences; the Court will refer to the first as the 1990 convictions and the second as the 2017 convictions. The 1990 convictions resulted in Petitioner being sentenced to consecutive indeterminate sentences of life in prison, 5 to 20 years in prison, and 3 to 10 years in prison. *See O'Quinn v. State*, 2020 WL 4379045, *1 (Kan. Ct. App. July 31, 2020) (unpublished), *rev. denied* Mar. 15, 2021. Petitioner was paroled on August 16, 2007. (*See* Doc. 5, p. 6-7.)

Petitioner was arrested in 2016 on new criminal charges, after which the Kansas Prisoner Review Board (formerly the Parole Board) placed a hold on Petitioner due to his status as a potential parole violator, leaving him unable to bond out of custody. *Id.* at 7; *State v. O'Quinn*, 2019 WL 5850291, *4 (Kan. Ct. App. Nov. 8, 2019) (unpublished). At a later hearing, Petitioner's parole officer testified that Petitioner had been placed on lifetime parole for the 1990 convictions. *O'Quinn*, 2019 WL 5850291, at *4. In 2017, a jury convicted Petitioner on all charges and the district court sentenced him to 620 months in prison. *O'Quinn*, 2020 WL 4379045, at *1. Petitioner pursued a direct appeal and in November 2019, the Kansas Court of Appeals (KCOA) affirmed Petitioner's 2017 convictions. *O'Quinn*, 2019 WL 5850291, at *1. Petitioner did not file a petition for review. *See* Online Records of the Kansas Appellate Courts, Case No. 118,977.

On April 1, 2022, Petitioner filed a motion for state habeas relief under K.S.A. 60-1501 in Reno County, Kansas and began what will be referred to in this order as "the 60-1501 action." (Doc. 47-5.) Petitioner named as respondents in the 60-1501 action the Kansas Secretary of Corrections, Jeff Zmuda, and the Kansas Prisoner Review Board. *Id.* at 1. Among other things, he argued that 2008 amendments to K.S.A. 21-4608 that authorized lifetime parole were applied to him in violation of the constitutional prohibition against ex post facto laws. *Id.* at 3-4.

2

On June 8, 2022, the state district court dismissed Secretary Zmuda from the 60-1501 action and, on November 17, 2022, it dismissed the remainder of the action for failure to prosecute after concluding that Petitioner "does not intend to take any effective steps to serve the Prisoner Review Board." (Doc. 47-1, p. 1-2; Doc. 47-6, p. 2.) Petitioner filed a timely notice of appeal and a motion to alter or amend the judgment of dismissal. (Docs. 47-2 through 47-4.) Then, on January 23, 2023, he filed a return of service reflecting that the Kansas Prisoner Review Board was served on January 17, 2023. (*See* Doc. 47-6, p. 2; Doc. 47-7, p. 5.)

On May 3, 2023, while the motion to alter or amend was pending in the 60-1501 action, Petitioner filed in this Court the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 that began this case. (Doc. 1.) The Court reviewed the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. It concluded that it appeared to seek relief more appropriately sought under 28 U.S.C. § 2241, so on May 8, 2023, it issued a memorandum and order explaining its reasoning and allowing Petitioner time to submit either an amended petition seeking relief under § 2241 or a written response explaining why he wished to proceed under § 2254. (Doc. 3.) Petitioner filed an amended petition, seeking relief under § 2241. (Doc. 5.) The sole ground for relief asserted in the amended petition is that the Prisoner Review Board, which is named as Respondent in this matter, violated the constitutional prohibition of ex post facto laws when it retroactively applied the 2008 statutory amendment to Petitioner and placed him on lifetime parole for the 1990 convictions. *Id.* at 2.

After examining the amended petition under Rule 4[1], the Court directed Respondent to file a Pre-Answer Response ("PAR") addressing exhaustion and timeliness. (Doc. 8.) Respondent did so on September 20, 2023 (Doc. 13) and Petitioner filed his reply to the PAR on October 11, 2023

---

[1] Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts authorizes district courts to apply the Rules to habeas petitions not brought under § 2254, such as those brought under § 2241.

(Doc. 14). The Court carefully considered the parties' arguments and, on October 17, 2023, it issued a memorandum and order to show cause ("MOSC") explaining that the 60-1501 action, in which the motion to alter or amend the judgment remained pending, involved the same issue asserted in the § 2241 petition. (Doc. 15, p. 4.) Because of the ongoing state-court proceedings, this Court directed Petitioner to show cause why this matter should not be dismissed without prejudice so that he could exhaust his state-court remedies, as is generally required before pursuit of federal habeas relief. *Id.* at 6.

Petitioner timely filed a response, in which he argued that further attempts to exhaust state-court remedies would be futile. (Doc. 16, p. 1.) The Court was not persuaded by his arguments, but before resolving whether this matter should be dismissed without prejudice or stayed and held in abeyance, the Court directed Petitioner to show cause why this matter was not also subject to dismissal because it was untimely filed. (Doc. 17, p. 1-2.) Again, Petitioner timely responded. (Doc. 18.) In a memorandum and order ("M&O") issued on November 27, 2023, the Court found that, in light of Respondent declining to address timeliness in the PAR when given the opportunity to do so, Petitioner had presented sufficient argument to survive the initial screening of his petition. (Doc. 19, p. 1.) The Court further concluded that a stay of this matter was more appropriate than dismissal without prejudice, so it stayed this case and held it in abeyance while Petitioner attempted to exhaust available state-court remedies. *Id.* at 2.

Over the following 16 months, Petitioner faithfully filed status reports with this Court about his ongoing efforts in state court. (Docs. 20-38.) In June 2025, after the Kansas Court of Appeals (KCOA) issued its opinion in the appeal in the 60-1501 action and Petitioner advised this Court that he did not intend to file a petition for review with the Kansas Supreme Court (KSC), the Court lifted the stay of this matter. (Doc. 41.) After requesting and receiving additional briefing from

Petitioner on the issue of procedural default, the Court concluded that a responsive pleading was required, so it directed Respondent to file an answer showing cause why the writ should not be granted. (Doc. 43, p. 1-2.)

Respondent filed its answer on August 18, 2025 (Doc. 44), along with relevant state court records (Docs. 45, 46, and 47). In the answer, Respondent argues that this matter was untimely filed, that Petitioner's claim for federal habeas relief is procedurally defaulted, and that the claim fails on its merits. (Doc. 44, p. 10-17.) Petitioner timely filed his traverse on September 22, 2025. (Doc. 50.) He argues that his claim is not procedurally defaulted but, if it is, that the actual innocence exception applies, and he argues that his claim is meritorious. (Doc. 50, p. 1-6.)

## Evidentiary Hearing

When faced with a federal habeas petition from a state prisoner, federal district courts generally do not hold evidentiary hearings to resolve factual questions that were not resolved in state court. *See Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) ("In all but [certain] extraordinary cases, [federal law] 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'"). Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires this Court, if it does not dismiss a habeas petition during the initial screening phase, to "review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."). The record in this case is sufficient to preclude habeas relief. Thus, an evidentiary hearing is unnecessary.

5

## General Standards

Petitioner argues that he was placed on lifetime parole due to the ex post facto application of a law that was enacted after he had completed parole. Thus, he challenges the execution of a sentence imposed by a state court for violations of state criminal law, which is an appropriate challenge to bring under 28 U.S.C. § 2241. *See Sandusky v. Goetz*, 944 F.3d 1240, 1246 (10th Cir. 2019); *see also Mayes v. Dowling*, 780 Fed. Appx. 599, 601 (10th Cir. 2019) (unpublished) ("In this circuit, a state prisoner may challenge the execution of his state sentence via a § 2241 petition."); *Johnson v. Patton*, 580 Fed. Appx. 646, 647-48 (10th Cir. Sep. 5, 2014) (unpublished) (holding that under certain circumstances, a § 2241 petition is a proper avenue for a state prisoner to "allege[] a federal due process deprivation of a liberty interest in jail-time credits").

## Timeliness

As the Court explained in its November 2, 2023 MOSC:

> This action is subject to the one-year limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in 28 U.S.C. § 2244(d). Section 2244(d)(1) provides:
>
> > (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> >
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to case on collateral review; or

6

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

(Doc. 17, p. 4.)

In the MOSC, the Court addressed the apparent untimeliness of this matter whether considered under 28 U.S.C. § 2244(d)(1)(A) or (D). (Doc. 17, p. 5-6.) In the answer, Respondent bases its timeliness argument on subsection (D). (Doc. 44, p. 10-11.) Neither Petitioner's response to the MOSC nor his traverse disputes that subsection (D) controls. (*See* Docs. 18, 50.) Thus, the Court will determine timeliness under 28 U.S.C. § 2244(d)(1)(D).

The Court noted in the MOSC that based upon the information before it at that time, if timeliness is determined under 28 U.S.C. § 2244(d)(1)(D),

the one-year AEDPA limitation period began running on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner appears to have learned that the government had placed him on lifetime parole either on April 1, 2016, when he was placed on "a A&D hold [*sic*]" or during a speedy trial hearing that appears to have occurred in March 2017. *See* (Doc. 5, p. 7); *O'Quinn*, 2019 WL 5850291, at *1-2 (noting that trial began on March 27, 2017 and the speedy trial hearing was held "[b]efore the jury was sworn"). Thus, at the latest, Petitioner was aware of the factual predicate of his claim by the end of March 2017. [Thus,] the one-year AEDPA statute of limitations would have expired by the end of March 2018. Petitioner did not file his petition in this federal habeas matter until May 3, 2023. (Doc. 1.)

(Doc. 17, p. 5.)

In the answer, Respondent now contends that the factual predicate of Petitioner's claims could have been discovered through the exercise of due diligence on July 1, 2008, when the statutory amendment at issue went into effect. (Doc. 44, p. 10.) Respondent argues that because Petitioner did not seek relief from the application of the amendment within the following year, this

action is time-barred. *Id.* at 10-11. Respondent also argues, in the alternative, that his matter is untimely "even if one gave Petitioner a very generous benefit of the doubt and found that the factual predicate for Petitioner's claim only came into view once he was charged in the 2015 case." *Id.* at 11. Respondent points out that Petitioner's final state-court action involving either his 1990 or 2017 convictions was final in 2020, but Petitioner did not initiate the 60-1501 action involving lifetime parole until April 2022. *Id.* at 4-5, 11.

Neither Petitioner's response to the MOSC nor his traverse asserts that this matter was timely filed. (*See* Docs. 18 and 50.) In addition, the Court has reviewed the state-court records provided by Respondent. Those records clearly reflect that Petitioner was aware of the factual predicate for his current claim for federal habeas relief by January 2017. At a hearing held on January 23, 2017, Petitioner told the state district court:

> "I don't have lifetime post-release. *They keep saying that - - the State does - -* but I don't. I'm sentenced under the old law. The statute in hand is five years. They just hadn't put me in yet to be released off of parole, and I don't know why. But I don't have lifetime post-release."

(Doc. 45-9, p.1,  8 (emphasis added).) Moreover, at a hearing in March 2017, Petitioner's counsel conceded that Petitioner "was on post - - parole at the time of" the offenses that led to the 2017 convictions, Petitioner's parole officer testified that the term of parole from the 1990 convictions was "lifetime parole," and Petitioner himself testified that he had been given notice that he was alleged to have violated his parole. (Doc. 45-4, p. 1, 5, 7, 13.)

As explained in the MOSC, even if the Court takes the March 2017 hearing as the date on which Petitioner became aware of the factual predicate of his current claim for federal habeas relief, "the one-year AEDPA statute of limitations would have expired by the end of March 2018." (Doc. 17, p. 5.) The AEDPA statute of limitations is subject to statutory and equitable tolling, but when given the opportunity to assert entitlement to such tolling, Petitioner did not do so. (*See* Doc.

17, p. 6-7 (MOSC explaining tolling); Doc. 18, p. 1-6 (Petitioner's response, arguing actual innocence).) Nor does he assert in his traverse that the AEDPA statute of limitations should be tolled. (*See* Doc. 50.) Therefore, since Petitioner did not file his petition in this federal habeas matter until May 3, 2023, the Court holds that the petition was untimely filed.

As also explained in the MOSC, however:

> [A]n exception to AEDPA's one-year time limitation exists in the rare and extraordinary case in which a petitioner adequately asserts actual innocence. "[A]ctual innocence 'serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations.'" *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). "Actual innocence means 'factual innocence not mere legal insufficiency.'" *O'Bryant v. Oklahoma*, 568 Fed. Appx. 632, 637 (10th Cir. 2014) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). This is because the actual innocence exception exists to provide an avenue to remedy "the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623-24.

> To obtain this exception, Petitioner is not required to conclusively exonerate himself; rather, his "burden at the gateway stage is to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" *Fontenot*, 4 F.4th at 1030 (quoting *House v. Bell*, 547 U.S. 518, 538, 553 (2006)). Unlike equitable tolling, "a petitioner who establishes actual innocence need not make a showing of diligence in order to get his otherwise time-barred substantive claims heard." *Fontenot*, 4 F.4th at 1032.

(Doc. 17, p. 7-8.)

The Tenth Circuit has further explained that

> tenable actual-innocence gateway pleas are rare, arising only in an extraordinary case. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.

*Fontenot*, 4 F.4th at 1031 (citations and quotation marks omitted). To qualify for this exception, or pass through the actual innocence gateway, the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324

(1995). "An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021).

As Respondent asserts in the answer, Petitioner does not support his claim to the actual innocence exception with any new reliable evidence.[2] (*See* Doc. 44, p. 14.) Petitioner asserts that at his 2017 trial, G.M.—the victim of the crimes underlying Petitioner's 1990 convictions, who is referred to here by her initials because she was the victim of sexual assault—testified that Petitioner was not the individual who had committed the 1989 crimes. (Doc. 18, p. 1-2.) Petitioner admits that the transcripts of the 2017 trial do not reflect this testimony. *Id.* at 2. He alleges, without evidence other than his own recollection of the 2017 trial, that the State has altered the transcript. *Id.* at 2. Petitioner's unsupported assertion that the transcript was altered is insufficient to support application of the actual innocence exception. *See Taylor*, 7 F.4th at 927 ("An actual innocence claim must be based on more than the petitioner's speculations and conjectures.").

Similarly, Plaintiff asserts that he was never interviewed by Wichita police about the events that led to the 2017 convictions and that the trial judge knew the victim's injuries were not caused by Petitioner. (Doc. 18, p. 2-3.) He also alleges inconsistencies between the injuries documented in photographs that were presented to the jury in 2017 and the injuries documented in a police report, which he states was not admitted at trial. *Id.* at 3.But Petitioner has not provided the photos

---

[2] Upon further reflection, the Court questions whether the actual innocence exception should ever apply to a state prisoner's petition for federal relief under 28 U.S.C. § 2241. State prisoners seeking relief under § 2241 may only challenge the execution of a sentence and not the constitutionality of the related conviction. The rationale for equitably applying the actual innocence exception, as reflected by the Tenth Circuit's language in *Fontenot*, quoted above, is to allow the Court to consider whether a "trial was free of nonharmless constitutional error" when there is persuasive evidence of actual innocence of the crimes of conviction. Even if the Court found Petitioner presented such evidence here—which it does not—the Court could not consider whether Petitioner's state-court trials were free of constitutional error. Constitutional challenges to a state-court conviction must be brought under 28 U.S.C. § 2254, not § 2241. Because this is a developing area of the law, however, and because Petitioner has not presented sufficient new reliable evidence to justify application of the actual innocence exception, the Court will not decide in this matter whether the actual innocence exception to procedural bars is, as a rule, unavailable for state prisoners seeking relief under 28 U.S.C.§ 2241.

or the police report to the Court. "[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Petitioner has also failed to provide to this Court any other evidence that supports his actual innocence argument. He has provided the transcript of G.M.'s 2017 testimony, which he claims was altered to remove exculpatory statements, but no statements by G.M. that could cause reasonable doubt as to Petitioner's guilt. (Doc. 18-1.) He has provided a May 2020 letter from the Office of the Attorney General for the State of Kansas and a redacted document that office provided showing a payment summary from the Division of Crime Victims Compensation. (Doc. 18-2, p. 1-4.) And he has provided a copy of one of the unpublished KCOA opinions from his state court proceedings that, in part, held that the results of DNA testing done after the 2017 convictions on evidence from the crimes underlying the 1990 convictions was not exculpatory. (Doc. 18-3.) None of this, considered separately or together, satisfies the high burden faced by a petitioner seeking to open the actual innocence gateway and proceed in an untimely federal habeas matter. Accordingly, the Court concludes that this matter must be dismissed as untimely filed.

## Procedural Default

In the alternative, Respondent argues that this matter must be dismissed because consideration of Petitioner's asserted ground for relief is procedurally defaulted. (Doc. 44, p. 12-14.) Petitioner disputes this argument in his traverse (Doc. 50, p. 5), as he did in his response (Doc. 42) to the Court's June 2025 memorandum and order ("M&O") regarding procedural default (Doc. 41). As explained in the June 2025 M&O:

>     "'A threshold question that must be addressed in every habeas case is that of exhaustion.'" *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (quoting *Harris v. Champion*, 15 F.3d 1538, 1553 (10th Cir. 1994)). "Although 'no statutory exhaustion requirement applies to petitions filed pursuant to § 2241, it is well-

settled that claims raised in § 2241 petitions must be exhausted before a federal court will hear them.'" *Knox v. Sharp*, 818 F. App'x 817, 818 (10th Cir. 2020) (unpublished order) (quoting *Burger v. Scott*, 317 F.3d 1133, 1144 n.8 (10th Cir. 2003)).

As previously explained to Petitioner:

> Generally speaking, for a claim to be exhausted, Petitioner must have presented it to the Kansas appellate courts, which must have denied relief. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); Kansas Supreme Court Rule 8.03B(a) ("In all appeals from criminal convictions or post-conviction relief on or after July 1, 2018, . . . when a claim has been presented to the Court of Appeals and relief has been denied, the party is deemed to have exhausted all available state remedies."). The purpose of the exhaustion requirement is to "give state courts a fair opportunity to act on [a Petitioner's] claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

(Doc. 15, p. 3-4.)

. . . The Tenth Circuit recently explained the habeas exhaustion requirement as follows:

> "For a federal court to consider a federal constitutional claim in an application for habeas, the claim must be 'fairly presented to the state courts' . . . ." Thus, we recognize that we must afford state courts "the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights," which those courts cannot do unless they have been "alerted to the fact that the prisoners are asserting claims under the United States Constitution." A petitioner "need not cite 'book and verse on the federal constitution.'" But he must do "more than present[ ] 'all the facts necessary to support the federal claim' to the state court or articulat[e] a 'somewhat similar state-law claim.'" At bottom, "the crucial inquiry is whether *the 'substance'* of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim."

*Honie v. Powell*, 58 F.4th 1173, 1184 (10th Cir. 2023) (citations omitted).

In addition to presenting the same claim to both the KCOA and this federal Court, Petitioner must have presented the claim to the KCOA in a way that complied with adequate and independent state procedural rules. "When a state court dismisses a federal claim on the basis of noncompliance with adequate and independent state procedural rules, federal courts ordinarily consider such claims

procedurally barred and refuse to consider them." *Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012). In other words, when "the claim has been presented [in the state courts] for the first and only time in a procedural context in which its merits will not be considered," a federal habeas court will not consider the claim. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). The claim is referred to as "procedurally barred," *see Banks*, 692 F.3d at 1144, or "procedurally defaulted," *see Simpson v. Carpenter*, 912 F.3d 542, 570 (10th Cir. 2018).

The KCOA's May 2025 opinion in Petitioner's appeal makes it clear that Petitioner argued to the state district court the claim he makes now in this federal habeas action:  that the application of the 2008 law to impose lifetime parole for the 1990 convictions violated the constitutional prohibition of ex post facto laws that increase punishment for crimes committed before the law took effect. *See O'Quinn II*, 2025 WL 1277046 at *1. With respect to Petitioner's arguments *on appeal*, however, the KCOA stated:

> O'Quinn appeals the denial of his motion to alter or amend, asserting that, because the district court made an error of fact, it abused its discretion. Although O'Quinn timely appealed the dismissal of his K.S.A. 60-1501 petition, he only argues the district court erred by denying his motion to alter or amend the judgment. An issue not briefed is waived and abandoned. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). Similarly, on appeal, O'Quinn does not argue the district court had a duty to serve the Board. This argument has also been abandoned. See 312 Kan. at 246. Accordingly, *the only issue before us is whether the district court made an error of fact and, therefore, abused its discretion in denying O'Quinn's motion to alter or amend judgment order*.

*Id.* at *2 (emphasis added).

The language quoted above makes clear that Petitioner did not brief to the KCOA that application to him of lifetime parole for the 1990 convictions was an ex post facto violation and that the failure to brief led the KCOA to deem it waived and abandoned. The requirement that every issue be adequately briefed is an independent and adequate state procedural rule established by Kansas. *See Roeder v. Schnurr*, 2022 WL 17665073, *4 (10th Cir. Dec. 14, 2022) (unpublished) ("Failure to brief is an independent and adequate state ground.") ; *see also Hadley v. Bruce*, 2006 WL 1675573, *5 (D. Kan. June 13, 2006) (unpublished) (finding a claim procedurally defaulted when it was deemed waived and abandoned in state court based on a failure to brief). Thus, the sole claim in this federal habeas matter is procedurally barred or defaulted and this Court will not consider its merits "unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).

To demonstrate cause for the procedural default, Petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [petitioner.]" *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). A petitioner also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

(Doc. 41, p. 4-7.)

In his response to the June 2025 M&O, Petitioner argues that there was cause for the procedural fault and that he suffered prejudice. (Doc. 42, p. 1-4.) Liberally construing the pro se response, it appears that Petitioner asserts that the cause for the procedural default was various errors and failures by the state district judge in the 60-1501 action, including the failure to explain to Petitioner how to effect service on the Prisoner Review Board, the failure to recognize that Petitioner had attempted to serve the Prisoner Review Board, and the denial of his motion to alter or amend judgment. *Id.* at 1-3. Petitioner also argues that manifest injustice occurred based on the length of time his 60-1501 action was pending in the state district court. *Id.* at 3. In both his response to the June 2025 M&O and his traverse, Petitioner asserts the actual innocence exception should excuse any procedural default. (Doc. 42, p. 3; Doc. 50, p. 5.)

To the extent that Petitioner's actual innocence arguments reflect those addressed above, they are rejected for the reasons previously explained. In addition, Petitioner in his traverse points to the document provided by the Kansas Attorney General's Office regarding payment from the Crime Victims Compensation Department. (Doc. 50, p. 5.) He notes that payment was requested on May 11, 2016; payment was made on May 24, 2016; and he was in custody since March 19, 2016. *Id.* The Court is not convinced that this supports a claim of actual innocence. The dates that payment was requested and issued are not the dates on which the crimes were committed. The

crimes occurred in June 2015, so the relevance of his incarceration in 2016 is unclear. (*See* Doc. 45-2, p. 201-02.) Petitioner has failed to persuade the Court that the actual innocence gateway should open to allow consideration of the merits of his sole, procedurally defaulted ground for relief in this federal habeas petition.

Petitioner's arguments that there was cause for the procedural default also fail. As explained in the June 2025 M&O and quoted above, the procedural default occurred when Petitioner failed to argue to the KCOA that the application of the 2008 statutory amendment to his term of parole violated the Ex Post Facto Clause. But almost all of the arguments he makes regarding cause for the procedural default focus on events in the state district court during the 60-1501 action, without explaining how those events *caused* the failure to brief the ex post facto issue to the KCOA. In one sentence in his response to the June 2025 M&O, Petitioner asserts that "as a result of the district court[']s failure to grant petitioner[']s motion to alter o[r] amend judgment order, the otherwise defaulted claim was reasonably unknown to petitioner[']s attorney and petitioner[']s attorney made no intentional decisions to forego the claim." (Doc. 42, p. 3.)

This conclusory argument is insufficient to show cause for the procedural default. It could be liberally construed to allege ineffective assistance of appellate counsel in the 60-1501 action as cause for the procedural default. But there is no indication before this Court that Petitioner has argued to the state courts that appellate counsel in his 60-1501 action was unconstitutionally ineffective. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (holding that ineffective assistance of counsel identified as cause for the procedural default of a different constitutional claim must be raised in state court before it may be used in federal court to establish cause for procedural default). Thus, to the extent Petitioner intended to rely on ineffective assistance of appellate counsel in the 60-1507 action to establish cause for his procedural default of the claim

in this matter, he may not do so. Because Petitioner has failed to show cause for the procedural default of the sole claim raised in this federal habeas matter, the Court need not reach the prejudice analysis.

## Conclusion

In summary, this matter was untimely filed and Petitioner procedurally defaulted his sole asserted ground for federal habeas relief. Petitioner's arguments that the actual innocence gateway should open to allow the Court to consider the merits of his asserted ground for federal habeas relief are unpersuasive. Similarly, his argument that this Court should excuse his procedural default because cause existed for the default fails. Thus, this Court cannot consider the merits of Petitioner's claim for relief and it must deny the petition.

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability [(COA)] when it enters a final order adverse to the applicant." This requirement also applies to petitions brought under 28 U.S.C. § 2241. *See Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485. The Court concludes that its procedural rulings in this matter are not subject to debate among jurists of reason. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for habeas corpus is denied. No

16

certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:  This 8th day of October, 2025, at Kansas City, Kansas.

s/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge